IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

|  |  |
|---|---|
| JEROME KEON GARDLEY,<br><br>Plaintiff<br><br>vs.<br><br>WEXFORD HEALTH SERVICES, et al.,<br><br>Defendants | 1:23-CV-00321-RAL<br><br>RICHARD A. LANZILLO<br>Chief United States Magistrate Judge<br><br>OPINION ON DEFENDANTS'<br>MOTION TO DISMISS<br><br>ECF NO. 39 |

I.    Introduction

Plaintiff Jerome Keon Gardley initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, Gardley asserts that medical and dental professionals at the Erie County Prison violated his constitutional rights as secured by the Fourteenth Amendment to the United States Constitution by failing to provide him with adequate dental care while he was a pretrial detainee at the prison. ECF No. 7. Gardley's Complaint also asserts dental malpractice claims. As Defendants, Gardley has named Joseph Kohler, D.M.D., Physician's Assistant (PA) Kang Li, an unidentified John Doe physician at the Millcreek Community Hospital, and Wexford Health Services (Wexford), a private entity contracted to provide medical services to inmates at the Erie County Prison. Id. ¶¶ 4-7. Gardley seeks compensatory and punitive damages and declaratory relief. Id. ¶¶ 47-54.

1

Presently pending is a motion to dismiss filed by Defendants Li, Kohler, and Wexford.[1]  ECF No. 39.  Plaintiff having filed a response, *see* ECF No. 47, this matter is ripe for adjudication.[2]

II.    Factual Background

The following factual averments are accepted as true for purposes of this motion.  On August 2, 2023, Gardley was booked into the Erie County Prison as a pre-trial detainee.  ECF No. 7 ¶ 13.  On August 10, 2023, he emailed the prison's medical department complaining about mouth pain and requesting a tooth extraction and pain pills.  *Id.* ¶ 14.  Medical responded the following day by placing Gardley on the schedule for a dental examination.  *Id.*

Gardley was seen by a dentist at some point during the next three days.  *Id.* ¶ 15.  While the outcome of that appointment is unclear, Gardley emailed medical again on August 15, 2023, complaining of pain and swelling in his neck and jaw.  *Id.*  A nurse responded by referencing Gardley's recent dental appointment and noting that a plan of care had been discussed.  *Id.*  Gardley requested antibiotics but was given ibuprofen and a cold compress.  *Id.*

---

[1] The John Doe physician has not been identified or served and, as such, has not filed a responsive pleading. However, because Gardley is proceeding in forma pauperis, his claims against the unidentified Defendant are subject to the screening provisions in 28 U.S.C. § 1915(e).

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

On August 23, 2023, Gardley was taken to Dr. Kohler for a tooth extraction. *Id.* ¶ 19. Dr. Kohler extracted three teeth but did not provide Gardley with antibiotics despite that "his gums and jaw were actively infected." *Id.*

Approximately one month later, Gardley complained of continuing mouth pain and a small red dot on his cheek. *Id.* ¶ 21. He was "added to the dental schedule and provider schedule" but "a misdiagnosis occurred and plaintiff contracted MRSA[3] which was discovered after a blood test was given." *Id.*

On October 7, 2023, Gardley visited a nurse complaining of a perceived spider bite on his cheek. *Id.* ¶ 22. The nurse agreed that Gardley's wound looked like a spider bite. *Id.* The following day, Gardley requested antibiotics because of severe pain and swelling around his jaw and neck near the area where his teeth had been extracted. *Id.* ¶ 23. He was again seen by a nurse, but the outcome of that visit is not described. *Id.* Later that day, another provider ordered medical to provide Gardley with "ice for 48 hours." *Id.* ¶ 25.

On October 11, 2023, an unidentified medical provider ordered a ten-day course of clindamycin, an antibiotic. *Id.* ¶ 28. Later that day, Gardley visited Dr. Kohlman to address his ongoing dental issues. *Id.* ¶ 29. Dr. Kohlman requested a second opinion from PA Li before ordering amoxicillin, another antibiotic, and sending Gardley to the emergency room at Millcreek Community Hospital for further evaluation. *Id.* After performing a CT scan, hospital staff diagnosed Gardley with "a very severe abscess in his mouth." *Id.* An emergency room physician recommended

---

[3] MRSA, or Methicillin-resistant Staphylococcus aureus, is a type of staph infection that can be resistant to common antibiotics. *See* https://www.cdc.gov/mrsa/about/index.html (visited 3/17/26).

cephalexin, another antibiotic, and returned Gardley to the Erie County Prison. *Id.* ¶ 30.

On October 12, 2023, Gardley visited Li as a follow-up to his emergency room visit. *Id.* ¶ 31. Li cancelled his previous order for clindamycin, Dr. Kohler's order for amoxicillin, and the emergency room physician's order for cephalexin. *Id.* Instead, Li prescribed yet another antibiotic, Bactrim. *Id.* Later that day, blood work confirmed Gardley's MRSA diagnosis. *Id.* ¶ 32.

III.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania,* 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Gardley is proceeding pro se, his complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se pleading to state a valid claim upon which relief could be granted, it will do so despite any confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.    Analysis

Liberally construed, Gardley's Complaint asserts that the dental care provided by Kohler and Li was so deficient that it constituted medical malpractice under Pennsylvania law and a violation of his Fourteenth Amendment rights.[4]    The Complaint also can be read to assert a state law respondeat superior claim against Wexford as well as a § 1983 claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977).    Finally, it alleges that the John Doe physician who treated Gardley at the Millcreek Community Hospital emergency room made "a medical judgment so bad it [fell] below professional medical standards."    Each claim will be addressed beginning with Gardley's constitutional claims.

A.    Constitutional Claims

1.    Kohler and Li

Gardley alleges that Kohler and Li violated his civil rights by providing inadequate dental care during his pretrial detention at the Erie County Prison. "[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)).    To plead that inadequate medical treatment during pretrial detention constitutes "punishment" in violation of the Fourteenth Amendment, a

---

[4] Typically, denial-of-medical-care claims are asserted under the Eighth Amendment's prohibition on cruel and unusual punishment. *Pearson v. Prison Health Service*, 850 F.3d 526 (3d Cir. 2017).  However, because "the Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner," the Court of Appeals for the Third Circuit has found "no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *Natale*, 318 F.3d at 581 (citation and internal quotation omitted).

plaintiff must allege facts to support inferences that (i) the plaintiff had a serious medical need, and (ii) prison or jail officials acted with deliberate indifference to that need. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). As federal courts have found in cases under the Eighth Amendment, such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Allegations of deliberate indifference must satisfy "a high threshold." *Anderson v. Bickell,* 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018). It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone," does not support a viable constitutional claim. *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Woodson v. Sheesley*, 2023 WL 12077722, at *5 (W.D. Pa. Sept. 25, 2023) (quoting source omitted). *See also Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery v. Noel,*

7

2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). Rather, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

In the instant case, there is no question that Gardley received some level of care. Between August 10, 2023, when he first contacted the medical department with complaints of mouth pain, and October 12, 2023, when his narrative concludes, medical and dental personnel examined him on no less than ten occasions. Based on the timeline in his pleading, it does not appear that Gardley ever had to wait more

than a day or two to obtain an appointment with a medical provider after lodging a complaint. He was offered some form of treatment – such as ibuprofen, antibiotics, cold compresses, ice, and a diagnostic referral to a hospital emergency room – on each occasion. To the extent that he feels that he should have been given different treatment options, such as an earlier course of antibiotics, his dissatisfaction with the care offered by his medical providers is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. *See Woodson*, 2023 WL 12077722, at \*6; *Tillery*, 2018 WL 3521212, at \*5. Indeed, such claims frequently arise – and are routinely rejected – in the prison setting. *See, e.g., Foye v. Wexford Health Sources, Inc.*, 675 Fed. Appx. 210, 215 (3d Cir. 2017) (medical defendants were not deliberately indifferent for failing to order a specific test at the inmate's request); *Rhines v. Bledsoe*, 388 Fed. Appx. 225, at 227 (3d Cir. 2010) (decision not to order diagnostic test was not deliberate indifference); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-35 (7th Cir. 1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); *Wisniewski v. Frommer*, 2017 WL 9534006, at \*5 (M.D. Pa. July 28, 2017), *report and recommendation adopted,* 2017 WL 3770493 (M.D. Pa. Aug. 31, 2017), *aff'd,* 751 Fed. Appx. 192 (3d Cir. 2018) (inmate "disputes with medical professionals over prescription and medications –

including the suspension of prescriptions, or the substitution of medications" do not support a constitutional claim).

Nor can Gardley state a Fourteenth Amendment claim by alleging malpractice or medical negligence. This type of language appears frequently throughout his pleading. *See* ECF No. 7 ¶ 21 ("A misdiagnosis occurred . . ."); ¶ 33 (MRSA symptoms "were carelessly misdiagnosed"); ¶ 34 (plaintiff "was misdiagnosed"); ¶ 40 (Wexford "misdiagnos[ed]" plaintiff and "delay[ed] treatment"); ¶ 43 (Kang "misdiagnosed plaintiff after Dr. Kohler removed plaintiff's infected teeth"); ¶ 45 (emergency room doctor "[made] a medical judgment so bad it falls below professional medical standards"). It is well-settled, however, that medical malpractice without accompanying deliberate indifference does not violate the Constitution. *Woodson*, 2023 WL 12077722, at *7 (quoting *Estelle*, 429 U.S. at 106). *See also Stewart v. Pa. Dep't Corr.*, 877 Fed. Appx. 816, 820 (3d Cir. 2017) (holding that a diagnostic failure, at worst, amounts to medical malpractice, which is not actionable under the Eighth Amendment); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference."). Gardley's failure to allege any facts suggesting "a culpable mental state establishing deliberate indifference" is fatal to his constitutional claim against Kang and Kohler. *Imhoff v. Temas*, 67 F.Supp.3d 700, 710 (W.D. Pa. Dec. 12, 2014).

### 2. Wexford

Gardley's constitutional claim against Wexford fares no better. The County of Erie apparently contracted with Wexford to provide medical services to inmates at the Erie County Prison. In *Monell v. Dep't of Soc. Servs.*, the United States Supreme Court held that a municipality could be liable under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury ...." 436 U.S. at 694. This rule extends to private corporations, like Wexford, that provide services pursuant to a government contract. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.4, 583 (3d Cir. 2003) ("*Monell* applies to other private organizations faced with liability under § 1983.").

Critically, an entity such as Wexford "cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, it can only be held liable under § 1983 if a plaintiff can establish that he or she suffered a constitutional injury that directly resulted from a policy, custom, or practice. *See, e.g., Callahan v. Clark*, 2023 WL 5596269, at *14 (W.D. Pa. Aug. 14, 2023) ("[A] private corporation performing a government function is liable under § 1983 only if it had a policy, custom, or practice that caused the plaintiff's constitutional injury—in this context, a policy, custom, or practice exhibiting deliberate indifference to a prisoner's serious medical needs.") (citing *Monell*). In other words, the plaintiff must plead both that

11

"there was a relevant [Wexford] policy or custom, and that the policy caused the constitutional violation." *Id.* (citing *Natale*, 318 F.3d at 583-84 ).

Gardley has made no attempt to meet this standard. His only factual allegation in this regard is that Wexford "was deliberately indifferent to [his] medical needs by misdiagnosing [him] and delaying treatment which [he] obviously had a very serious medical need." ECF No. 7 ¶ 40. This conclusory averment fails to allege the existence of an injury stemming from a relevant Wexford policy or custom and, as such, is insufficient to state a plausible claim.

Additionally, "the requirement of an underlying constitutional violation is implicit in the Third Circuit's *Monell* framework." *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018). *See also Gayemen v. Sch. Dist. of City of Allentown*, 2016 WL 3014896, *12 (E.D. Pa. May 26, 2016) (holding that a plaintiff asserting a *Monell* claim must plead an underlying constitutional violation); *Wilson v. City of Philadelphia*, 177 F.Supp.3d 885, 913 (E.D. Pa. Apr. 8, 2016) ("To successfully plead his *Monell* claim, Wilson must establish an underlying constitutional violation.") (citing *Monell*, 436 U.S. at 658). As noted above, Gardley has failed to allege facts to support an inference that any agent or employee of Wexford acted with deliberate indifference to his dental condition. This failure is independently dispositive of his claim against Wexford. *See Mills v. City of Harrisburg*, 350 Fed. Appx. 770, 773, n. 2 (3d Cir. 2009) ("Absent an underlying constitutional violation by an agent of the municipality, [...] the municipality itself may not be held liable under § 1983."); *3909 Realty LLC v. City of Philadelphia*, 2021

WL 2342929, at *4 (E.D. Pa. June 8, 2021) ("As the Court finds that Plaintiffs have not plausibly alleged any underlying constitutional violation, it is not necessary to decide the *Monell* liability issue."); *Wilson*, 177 F.Supp.3d at 917 ("Wilson fails to establish an underlying constitutional violation, and the Court accordingly need not address his *Monell* claim against the City in any further detail.").

### 3.  John Doe Defendant

Although the "John Doe" Defendant has not been identified by name or served, the Court notes that Gardley's constitutional claim against him also fails as a matter of law.  The Complaint identifies the Doe Defendant as an emergency room physician at Millcreek Community Hospital.  He alleges that he acted with deliberate indifference to his serious medical needs, although he does not explain what errors that physician allegedly made.  More importantly, it is axiomatic that § 1983 only provides a remedy for deprivations of a federal constitutional or statutory right "by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (emphasis added).  Private citizens, on the other hand, "do not act under color of state law" and thus "are not liable under Section 1983." *Gotell v. Clarke*, 2021 WL 9037643, at *3 (W.D. Pa. July 26, 2021) (quoting source omitted).

Gardley's pleading makes clear that the unidentified emergency room doctor was a private physician working in the emergency room at Millcreek Community Hospital.  As such, he is not amenable to suit under § 1983, and Gardley's constitutional claims against him must be dismissed. *Gotell*, 2021 WL 9037643, at *3 ("[B]ecause Dr. Clarke is a private physician employed by the Children's Hospital

of Pittsburgh, rather than a state actor, she is not amenable to suit under § 1983 and must be dismissed."); *Massey v. Crady*, 2018 WL 4328002, at *6 (W.D. Pa. Aug. 8, 2018) ("Private citizens, such as [defendants] are not state actors, and therefore ... any § 1983 claims against [them] should be dismissed.").

### B. State law claims and supplemental jurisdiction

At the conclusion of his Complaint, Gardley lists "medical malpractice," "medical negligence," and "intentional infliction of emotional distress" under the caption "pendant state law claims." ECF No. 7 ¶ 45. Having found that the Complaint fails to state any claim under the Constitution or other federal law, the Court will decline to exercise supplemental jurisdiction over these apparent state law claims at this time.

"Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the United States." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994). Thus, "[w]hen the claims over which a district court has original jurisdiction are resolved before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 Fed. Appx. 68, 74 n. 6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted); *see also Yue Yu v. McGrath*, 597 Fed. Appx, 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss "all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the

14

federal claims over which it had original jurisdiction"). "Importantly, pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." *Yue Yu*, 597 Fed. Appx. at 68.

Gardley's federal constitutional claims are subject to dismissal. Because each of his remaining claims is entirely grounded in state law, the Court will decline to exercise supplemental jurisdiction over those claims. *Id*. at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction"). Gardley's medical indifference, medical negligence, and intentional infliction of emotional distress claims will each be dismissed, and in the absence of a curative amendment to his federal claims, dismissal of the state law claims will be without prejudice to Gardley's right to assert them in the appropriate state court if he so chooses.

C. Leave to amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Because it is not clear that amendment would be futile, Gardley may, if he chooses, file an amended complaint on or before **April 27, 2026**. Gardley should attempt to remedy the specific deficiencies identified in this opinion and is reminded that an amended complaint "must be complete in all respects. It is

a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at \*1 n. 1 (W.D. Pa. Aug. 1, 2018) (quoting *Young v. Keohane*, 809 F.Supp. 1185, 1189 (M.D. Pa. 1992)).

V.     Conclusion

Gardley has failed to state a constitutional claim for medical indifference against any of the individual Defendants and has failed to plead a viable *Monell* claim against Wexford.   The federal claims against these Defendants will be dismissed, without prejudice.   Gardley may file an amended complaint on or before April 23, 2026, if he believes he can cure the deficiencies of his federal claims identified herein. If Gardley fails to file an amended complaint by that date, the Court will issue a final order dismissing those same claims with prejudice.   The Court declines to exercise supplemental jurisdiction over Gardley's state law claims absent his assertion of a viable federal claim.[5]

DATED this 27th day of March, 2026.

SUBMITTED BY:

RICHARD A. LANZILLO
Chief United States Magistrate Judge

---

[5] Although the Court has declined to exercise supplemental jurisdiction over Gardley's pendent state law claims at this time, Gardley may include those claims in his amended pleading, should he elect to file one.  Otherwise, those claims are each dismissed without prejudice to Gardley's right to assert them in a timely action in an appropriate state court forum.